# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Case No. CR414-005 |
| LILLIE MAE EUBANK ) | |

## REPORT AND RECOMMENDATION

Lillie Eubank, charged with orchestrating the murder of her soldier husband, seeks to suppress the evidence obtained pursuant to a Search and Seizure Authorization (hereinafter "warrant") issued by a military judge for her residence and vehicle on Fort Stewart, Georgia. Doc. 159 at 9-11. She also challenges the search of her cell phone by government authorities. *Id.* at 11-13. The Court finds that these searches met constitutional standards.

### 1. Residence and vehicle search

Eubank contends that the supporting affidavit for the warrant authorizing a search of her residence and vehicle, doc. 174-1 at 5-10, included a statement that was materially false or made with reckless

disregard for the truth, and she requested an evidentiary hearing in order to prove her allegations. The Court declined to hold a hearing, as Eubank failed to make the "substantial preliminary showing" that the affidavit was deliberately false, as required by *Franks v. Delaware*, 438 U.S. 154, 155 (1978).

A sworn affidavit offered in support of a search warrant carries a "presumption of validity," *id.* at 171, and ordinarily a court assesses the probable cause basis for a search warrant by looking within the four corners of the warrant affidavit. A defendant who seeks to step outside the affidavit's boundaries, and offer evidence impeaching its veracity, must meet an "onerous" burden. *United States v. Daoud*, 755 F.3d 479, 488 (7th Cir. 2014); *United States v. Clenney*, 631 F.3d 658, 663 (4th Cir. 2011) (*Franks* imposes a "rigorous" standard); *United States v. Arbolaez*, 450 F.3d 1283, 1294 (11th Cir. 2006) (the *Franks* "substantiality requirement is not lightly met"). A defendant must demonstrate that the affiant included a false statement (or omitted relevant information) material to a finding of probable cause *and* that the false statement was made deliberately or with reckless disregard for the truth. *Franks*, 438 U.S. at 155-56, 171. Mere "conclusory" allegations of deliberate

falsehood or recklessness will not suffice. *Id.* at 171. Rather, the defendant must make "an offer of proof," supported by affidavits or other reliable witness statements, establishing the deliberate falsity or recklessness of a statement made by the affiant, or satisfactorily explain the absence of such evidence. *Id.* Even if these requirements are met, no hearing is needed if "there remains sufficient content in the warrant affidavit to support a finding of probable cause." *Id.* at 171-72.

Eubank challenges a single statement in the search warrant affidavit: " 'A search of the scene did not provide evidence that would support SPC Eubank was assaulted at the location wherein he was discovered . . . .' " Doc. 159 at 9 (quoting doc. 174-1 at 1). She contends that without this "demonstrably false" statement there was insufficient probable cause to establish a nexus between the crime scene (at Holbrook Pond) and her residence and pickup truck. Doc. 159 at 9. As the government correctly notes, however, Eubank has not made the required offer of proof that the challenged statement was *deliberately* false or made with reckless disregard for the truth. Eubank reasons that the statement was obviously false, for blood and other physical evidence was found at the scene and the agents saw no "drag marks" or "blood

3

trail" during their investigation. *Id.* Contrary to *Franks*, these factual assertions are not supported by affidavit or other sworn or otherwise reliable statements. But even if they were, such findings would not inevitably lead to the conclusion that the brutal beating of Spc. Eubank necessarily occurred at Holbrook Pond. Obviously, the victim of a physical assault can be transported from one place to another, then dumped out of a vehicle or carried a short distance without any evidence of drag marks or a clear blood trail. So, the challenged statement is not "demonstrably false" on its face. Eubank further reasons that the falsity of the statement is established by the fact that the government later alleged in the superseding indictment that Spc. Eubank was assaulted where he was found. Doc. 159 at 9-10. It is not uncommon, however, for investigators to reach different conclusions about the evidence as an investigation proceeds, and the fact that investigators change their minds about how a crime was committed does not establish that they either lied or were reckless in making their initial assessment of the evidence. Eubank, therefore, falls far short of the necessary threshold showing that the affidavit contained a deliberately false or reckless statement.

Even if Eubank had made a properly-supported offer of proof, she would not be entitled to an evidentiary hearing since the challenged statement is not "necessary to the finding of probable cause." *Franks*, 438 U.S. at 156. Apart from the contested statement, the search warrant affidavit relates the following information:

> (1) Spc. Eubank was discovered with a blunt force trauma injury to his head at around 5:00 p.m. on November 13, 2013 near Holbrook Pond, and he subsequently died of his injuries. The area where he was found was visible to the public.
>
> (2) Eubank later reported that she had not seen her husband since 4:30 p.m. that same day at Holbrook Pond, where she had dropped him off to go "tracking" for wild game.
>
> (3) Although she claimed that he was alone, text messages on her phone reflected that she asked him "where are you guys" and received the response "we're over here" some 30 minutes before he was found. When asked about her use of the plural, Eubank stated that "we" and "you guys" meant Spc. Eubank and "the animals."
>
> (4) Witnesses had reported seeing a large pickup truck in the area "acting suspiciously" near the time that Spc. Eubank was found. Eubank drives such a vehicle. While she initially denied driving her Dodge Ram pickup to the side of the pond where the body was found, she ultimately conceded that she had done so.
>
> (5) Eubank and her daughter gave inconsistent accounts of whether they heard Spc. Eubank yell across Holbrook

5

Pond at approximately 4:30 p.m.

(6) Some two months prior to the assault, the military had addressed a domestic assault incident by Spc. Eubank against Eubank and her daughter.

(7) Agents who had been to Eubank's residence had observed some spots in her vehicle,[1] suggesting it had recently been cleaned.

(8) Neighbors informed the investigators that Eubank had told them she was taking her brother to bus station at around 4:30 p.m. on November 30, and they had observed them leave her residence with a black bag. Eubank had failed to mention her brother during an interview conducted on December 1, 2013.

Doc. 174-1 at 5-6.

Even if the affidavit is stripped of the statement that Eubank contends is false, there remains sufficient information to establish probable cause for a search of her residence. Eubank's strained explanation of her text messages, the witness observations of a large pickup acting strangely near the place and time that the victim was found, Eubank's initial denial but ultimate admission that she had

---

[1] In fact, the water spots were on the exterior of Eubank's vehicle, not its interior. Doc 225 at 3-4 (noting that agents observed the spots when they walked through Eubank's carport, which was within the "curtilage" of her residence). The government asserts, and Eubank does not dispute, that the affiant's misstatement about the location of the spots resulted from a simple misunderstanding of the information relayed to her by other agents.

6

driven her large pickup to that very spot, the fact that her vehicle had just been washed, and her failure to even mention that she had taken her brother to the bus station during the same general time frame, when taken together, clearly justified the reasonable belief that Eubank and her brother had something to do with the murder. Whether the assault occurred at Holbrook Pond or elsewhere, it was also reasonable for the military judge to infer that evidence of that brutal crime (particularly traces of blood and tissue) would likely be found in the residence and pickup that Eubank and her brother had been occupying near the time of the murder. Contrary to Eubank's assertion, therefore, the warrant affidavit establishes a sufficient nexus between the crime and Eubank's property independent of the contested "false" statement.[2]

---

[2] Eubank also challenges the technical sufficiency of the military search warrants, pointing out that they bear "mechanical or computer generated signature stamps" rather than handwritten signatures. Doc. 159 at 11. The Fourth Amendment does not require a handwritten signature or, for that matter, "any other specific marking from the issuing judge" on a search warrant. *United States v. Cruz*, 774 F.3d 1278, 1287 (10th Cir. 2014 (district judge's failure to sign or date search warrant did not render warrant facially invalid); *United States v. Lyons*, 740 F.3d 702, 727 (1st Cir. 2014) ("we find no sufficient reason to read a signature requirement into the Fourth Amendment, and we leave to any future revisers of Federal Rule of Criminal Procedure 41(e) whether to adopt such a presently-omitted requirement for search warrants"); *United States v. Futch*, CR603-6 (R&R entered July 14, 2003) (" 'As long as the magistrate in fact performs the substantive tasks of determining probable cause and authorizing the issuance of the warrant, the amendment is satisfied.'").

7

The search warrants for Eubank's residence and vehicle were facially sufficient and properly issued, and she has failed to make a "substantial preliminary showing" that the affiant included any deliberately false or reckless statements in the affidavit. Nor has she shown that the challenged statement was essential to the finding of probable cause. Accordingly, Eubank is not entitled to an evidentiary hearing under *Franks v. Delaware*.

### 2. Cell phone search

Eubank, who consented to a search of her cellular phone by Army CID agents on December 1, 2013 and by FBI agents on December 3, 2013, doc. 174-1 at 3 (Ex. A), 20(Ex. G), contends that her consent "was given as a result of [her] vulnerable state and the harsh impermissible tactics of the agents." Doc. 159 at 13. She does not develop this argument with any supporting facts.

Eubank consented to a search of her cell phone at 2:59 p.m. on December 1, during the initial phase of her interview by a CID agent. *Id.* at 3 (Consent to Search form); doc. 244 ("Tr." at 6-15). As the Court

---

Further, a military judge is expressly granted authority to issue either "written or oral" search warrants. MRE 315(b). The military judges' use of a computer generated signature stamp, therefore, violated neither the Constitution nor any rules governing the issuance of search warrants.

found in a prior Report and Recommendation, Eubank initiated the contact with CID officials to report that her husband was missing, and she came to the CID office voluntarily in order to provide assistance in their investigation of that (false) claim. Doc. 289 at 3-5. The Court previously determined that the interrogating agent used no coercive tactics of any kind during this initial questioning. *Id.* Eubank freely consented to a search of her cell phone in order to help the agents establish a precise timeline of the events. Tr. at 8-15. She signed a consent form that expressly advised her that she had a right to refuse to allow a search of her property. Doc. 174-1 at 3.

During a second interview by FBI agents on December 2-3, 2013, Eubank again consented to a search of her phone after signing a form reflecting that she had "been advised of her right to refuse consent." *Id.* at 20 (Ex. G). The Court has previously found that Eubank was not in custody during either interview and that her statements were not the product of coercion by the interrogating agents. Doc. 289 at 26, 33-34. Similarly, there is no evidence that the agents attempted to overbear Eubank's will in order to obtain consent to search her phone, notwithstanding her claim to the contrary. The Court finds that Eubank

voluntarily consented to search of her phone on both December 1 and December 3, 2013.

After obtaining Eubank's consent for a phone search on December 1, a CID agent sought and obtained a warrant authorizing a search of that phone from a military judge. For the same reasons discussed earlier, the warrant was facially valid and Eubank has failed to make a threshold showing that any statement in the warrant affidavit was deliberately false or made with reckless disregard for the truth. She, therefore, is not entitled to a *Franks* hearing in order to contest the veracity of the agent's sworn statements.

## CONCLUSION

Eubank's motion to suppress the search of her residence, vehicle, and cell phone (doc. 159) is without merit and should be **DENIED**.

**SO REPORTED AND RECOMMENDED** this 31st day of March, 2015.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA